UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| WENDI C. GILPIN,<br><br>    Petitioner,<br><br> v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security<br>Administration,<br><br>    Respondent. | Case No. 1:14-cv-00285-CWD<br><br>**MEMORANDUM DECISION<br>AND ORDER** |

## INTRODUCTION

Currently pending before the Court is the Petition for Review of the Respondent's

denial of social security benefits, filed by Wendi Gilpin on July 14, 2014. (Dkt. 1.) The

Court has reviewed the Petition for Review and the Answer, the parties' memoranda, and

the administrative record (AR), and for the reasons that follow, will affirm the decision of

the Commissioner.

## PROCEDURAL AND FACTUAL HISTORY

Petitioner filed an application for Disability Insurance Benefits and Supplemental

Security Income on June 9, 2009, claiming disability beginning on December 28, 2008,

**MEMORANDUM DECISION AND ORDER - 1**

due to multiple medical conditions which included depression, bipolar disorder, borderline personality disorder, and obsessive compulsive disorder. Her application was denied initially and on reconsideration, and a hearing was held before Administrative Law Judge (ALJ) Deborah Rose on July 7, 2010. After hearing testimony from Petitioner and a vocational expert, ALJ Rose issued a decision finding Petitioner not disabled on August 27, 2010.

On March 23, 2011, the Appeals Council denied Petitioner's request for review, making the ALJ's decision the final agency decision. (AR 2-9.) Petitioner sought judicial review and, on September 27, 2012, the United States District Court for the Eastern District of Oklahoma[1] remanded the case for further administrative proceedings. (AR 372-73.) ALJ Rose held a second hearing on April 11, 2013. After hearing testimony from Petitioner and a vocational expert, ALJ Rose issued a decision finding Petitioner not disabled on June 24, 2013. The Appeals Council denied Petitioner's request for review on March 10, 2014, making the ALJ's June 24, 2013 decision the final agency decision. (AR 343-46.)

Petitioner appealed this final decision to the Court. The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

Petitioner was born on May 7, 1980. She has a high school education, and her prior work experience includes work as a garment sorter, cashier, and child care worker.

---

[1] Petitioner currently resides in Kuna, Idaho. (Dkt. 1.)

**MEMORANDUM DECISION AND ORDER - 2**

## SEQUENTIAL PROCESS

The Commissioner follows a five-step sequential evaluation for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. At step one, it must be determined whether the claimant is engaged in substantial gainful activity. The ALJ found Petitioner had not engaged in substantial gainful activity since her alleged onset date, December 28, 2008. At step two, it must be determined whether the claimant suffers from a severe impairment. The ALJ found Petitioner's degenerative disc disease, polycystic ovarian syndrome, bipolar disorder, borderline personality disorder, and post-traumatic stress disorder severe within the meaning of the Regulations.

Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found Petitioner's impairments did not meet or equal the criteria for the listed impairments, specifically considering Listing 1.00 (Musculoskeletal System) and 12.00 (Mental Disorders). If a claimant's impairments do not meet or equal a listing, the Commissioner must assess the claimant's residual functional capacity (RFC) and determine, at step four, whether the claimant has demonstrated an inability to perform past relevant work.

The ALJ found Petitioner was not able to perform her past relevant work as a garment sorter or cashier. If a claimant demonstrates an inability to perform past relevant work, the burden shifts to the Commissioner to demonstrate, at step five, that the claimant retains the capacity to make an adjustment to other work that exists in significant levels in the national economy, after considering the claimant's residual

**MEMORANDUM DECISION AND ORDER - 3**

functional capacity, age, education and work experience.

Here, the ALJ found Petitioner retained the RFC to perform light work, with limitations restricting her to lift and/or carry and push and/or pull ten pounds frequently and twenty pounds occasionally; stand and/or walk six hours in an eight-hour workday and sit six hours in an eight hour work day; occasionally climb ramps and stairs, but not ladders, ropes or scaffolds; occasionally balance, stoop, kneel, crouch and crawl; and perform superficial and incidental work-related interaction with co-workers and supervisors, but not perform work where significant public interaction would be required for completion of job tasks. The ALJ further limited Petitioner to performing "simple, routine tasks." With that RFC, the ALJ determined Petitioner could perform the requirements of representative occupations such as bagger, fruit cutter, and inspector/hand packager.

## STANDARD OF REVIEW

Petitioner bears the burden of showing that disability benefits are proper because of the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A); *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971). An individual will be determined to be disabled only if her physical or mental impairments are of such severity that she not only cannot do her previous work but is unable, considering her age, education, and work experience, to engage in any other kind

**MEMORANDUM DECISION AND ORDER - 4**

of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d)(2)(A).

On review, the Court is instructed to uphold the decision of the Commissioner if the decision is supported by substantial evidence and is not the product of legal error. 42 U.S.C. § 405(g); *Universal Camera Corp. v. Nat'l Labor Relations Bd.*, 340 U.S. 474 (1951); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (as amended); *DeLorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla but less than a preponderance, *Jamerson v Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

The Court cannot disturb the Commissioner's findings if they are supported by substantial evidence, even though other evidence may exist that supports the petitioner's claims. 42 U.S.C. § 405(g); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Thus, findings of the Commissioner as to any fact, if supported by substantial evidence, will be conclusive. *Flaten*, 44 F.3d at 1457. It is well-settled that, if there is substantial evidence to support the decision of the Commissioner, the decision must be upheld even when the evidence can reasonably support either affirming or reversing the Commissioner's decision, because the Court "may not substitute [its] judgment for that of the Commissioner." *Verduzco v. Apfel*, 188 F.3d 1087, 1089 (9th

**MEMORANDUM DECISION AND ORDER - 5**

Cir. 1999).

When reviewing a case under the substantial evidence standard, the Court may question an ALJ's credibility assessment of a witness's testimony; however, an ALJ's credibility assessment is entitled to great weight, and the ALJ may disregard a claimant's self-serving statements. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Where the ALJ makes a careful consideration of subjective complaints but provides adequate reasons for rejecting them, the ALJ's well-settled role as the judge of credibility will be upheld as based on substantial evidence. *Matthews v. Shalala*, 10 F.3d 678, 679-80 (9th Cir. 1993).

## DISCUSSION

Petitioner asserts the ALJ erred at step two when she failed to find Petitioner's obsessive compulsive disorder severe within the meaning of the regulations. Respondent contends the ALJ's failure to include Petitioner's OCD at step two was harmless error because the ALJ considered the limitations posed by the impairment at later steps in the sequential evaluation process. Next, Petitioner contends the ALJ erred in assessing Petitioner's RFC, because the ALJ did not properly evaluate the psychological opinions in the record. Specifically, Petitioner contends the ALJ's evaluation of the opinions of Drs. Pearce, Ward, and Moore was incorrect. As a result, Petitioner argues the ALJ's RFC assessment did not adequately address all of Petitioner's limitations, and the ALJ's limitation of Petitioner to "simple, routine tasks" did not adequately account for Petitioner's moderate limitations with respect to concentration, persistence and pace.

**MEMORANDUM DECISION AND ORDER - 6**

1.      **Severity**

Prior to the Commissioner finding a medically determinable physical or mental

impairment severe, a claimant must establish the existence of a physical or mental

impairment. 42 U.S.C. § 423(d), Soc. Sec. Ruling (SSR) 96-4p, available at 1996 WL

374181.[2] An impairment must result from anatomical, physiological, or psychological

abnormalities that can be shown by medically acceptable clinical and laboratory

diagnostic techniques. *Ukolov v. Barnhart*, 420 F.3d 1002, 1004–5 (9th Cir. 2005).

Reported symptoms alone cannot establish the existence of an impairment. *Id*. at 1005–6;

SSR 96-4p.

For an impairment to meet the "severity" requirement, it must "significantly limit"

one's "physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a).

Basic work activities include physical functions such as walking, standing, sitting, and

lifting; capacities for seeing, hearing and speaking; understanding, remembering, and

carrying out simple instructions; using judgment; responding appropriately in a work

situation; and dealing with changes in a routine work setting. 20 C.F.R. § 404.1521(b).

Disability is defined, therefore, in terms of the effect a physical or mental impairment has

on a person's ability to function in the workplace. *Bowen v. Yuckert*, 482 U.S. 137, 146

(1987). Medical and other evidence must be furnished to establish the existence of the

disability. *Bowen*, 482 U.S. at 146.

---

[2]      Social Security Rulings do not have the force of law but must be given some deference as long as
they are consistent with the Social Security Act and regulations. *Ukolov v. Barnhart*, 420 F.3d 1002, n.2
(9th Cir. 2005). In *Ukolov*, the Ninth Circuit found that SSR 96-4p was consistent with the purposes of
Titles II and XVI of the Social Security Act. *Id.*

Petitioner argues the ALJ erred by not including her OCD as a severe impairment at step two, because the ALJ's first written determination included OCD as a severe impairment. (AR 17.) However, assuming that such an omission constituted legal error, it can only have prejudiced Petitioner at step three or step four (RFC), because step two was resolved in Petitioner's favor. *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005). *See also Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (finding failure to list bursitis at step two was harmless when the ALJ extensively discussed the impairment at step four of the analysis). Here, Petitioner does not challenge the ALJ's step three finding, but rather the ALJ's assessment of Petitioner's RFC.

First, it bears noting that the ALJ's first determination, which included a finding at step two that Petitioner's OCD was severe, nonetheless found Petitioner retained the ability to perform medium work and her past relevant work as a clothes sorter. (AR 24.) Here, despite failing to include Petitioner's OCD as a severe impairment at step two, the ALJ found Petitioner did not retain the RFC to perform past relevant work and proceeded to step five. Thus, from a cursory examination of the record, it does appear the ALJ considered the impact of Petitioner's reported OCD symptoms.

Next, the ALJ discussed the psychological findings extensively. First, she noted the psychological evaluation report completed on July 21, 2009, by examining psychologist Kathleen Ward, Ph.D., wherein Dr. Ward noted Petitioner presented with the subjective complaint of obsessive-compulsive disorder. (AR 362.) Dr. Ward recited Petitioner's complaints of OCD symptoms, and her opinion of Petitioner's functioning

**MEMORANDUM DECISION AND ORDER - 8**

despite those limitations. (AR 362.) The ALJ discussed also Dr. Moore's findings. On May 18, 2010, Ken Moore, Ph.D., completed a treatment plan for Petitioner. The ALJ noted that the treatment plan indicated diagnoses of bipolar disorder-depressed-with psychotic features, posttraumatic stress disorder and panic disorder.  The ALJ evaluated and discussed Dr. Moore's Mental RFC Questionnaire, completed on July 13, 2010, which in a "check the box" fashion indicated Petitioner suffered from recurrent obsessions or compulsions, and the ALJ assessed Dr. Moore's clinical findings. (AR 364, 422-26.) Notably, Dr. Moore, a treating physician, did not note any OCD symptoms were reported by Petitioner. (AR 362-63.)

And finally, the ALJ evaluated and discussed the opinions of the two state agency reviewing psychological consultants, Dr. Burnard Pearce, Ph.D., and Dr. Dan Cox, Ph.D. (AR 365). Dr. Pearce expressly considered the impact of Petitioner's OCD symptoms in his analysis, and was of the opinion that Petitioner's mental impairments resulted in moderate limitations in maintaining social functioning and in maintaining concentration, persistence, or pace. (AR 258 – 273.) Dr. Cox, upon reviewing the medical records and Dr. Pearce's opinion, concurred with Dr. Pearce's mental RFC assessment. (AR 286.)

By expressly considering the opinions of the treating, examining, and reviewing physicians, all of which included Petitioner's OCD symptoms (except for Dr. Moore, who did not expressly note any OCD symptoms), the ALJ considered the impact of Petitioner's reported OCD symptoms. The decision reflects that the ALJ considered any limitations posed by Petitioner's OCD at step four. Consequently, any error the ALJ

**MEMORANDUM DECISION AND ORDER - 9**

made in failing to identify Petitioner's OCD at step two was harmless.

**2.    Physician Testimony**

Petitioner argues, by not identifying OCD as a severe impairment, the ALJ failed to incorporate into the RFC assessment the limitations described by Drs. Pearce, Moore, and Ward. (Pet. Brief at 10.) Petitioner contends the ALJ's evaluation of the physician opinions was error.

The Court of Appeals for the Ninth Circuit distinguishes among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians). *Lester v. Chatter*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, more weight is accorded to the opinion of a treating source than to nontreating physicians. *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir.1987). If the treating physician's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir.1991). If the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject the treating physician's opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record for so doing. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir.1983). In turn, an examining physician's opinion is entitled to greater weight than the opinion of a nonexamining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir.1990); *Gallant v. Heckler*, 753 F.2d 1450 (9th Cir.1984).

An ALJ is not required to accept an opinion of a treating physician if it is conclusory and not supported by clinical findings. *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). Additionally, an ALJ is not bound to a physician's opinion of a petitioner's physical condition or the ultimate issue of disability. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). If the record as a whole does not support the physician's opinion, the ALJ may reject that opinion. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). Items in the record that may not support the physician's opinion include clinical findings from examinations, conflicting medical opinions, conflicting physician's treatment notes, and the claimant's daily activities. *Id.*; *Bayliss v. Barnhart*, 427 F.3d 1211 (9th Cir. 2005); *Connett v. Barnhart*, 340 F.3d 871 (9th Cir. 2003); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595 (9th Cir. 1999). Additionally, an ALJ may reject a treating physician's opinion if it is based "to a large extent" on a claimant's self-reports that have been property discounted as not credible. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).

### A.   *Dr. Ward*

Dr. Kathleen Ward completed a mental status examination of Petitioner on July 21, 2009. (AR 253 – 256.) Within her report, she noted Petitioner reported OCD symptoms such as showering for 1-3 hours, and completing most tasks in threes. (AR 253.) Dr. Ward noted Petitioner to be a reliable historian. According to Dr. Ward, without continued treatment, the "risk for emotional decompensation appears significant. Even with treatment, [Petitioner's] issues …would appear fairly resistant to improvement.

Petitioner argues the ALJ failed to consider the effects of Petitioner's OCD symptoms as reported by Dr. Ward. (Pet. Brief at 8.)

However, Petitioner fails to offer any specific argument regarding the ALJ's evaluation of Dr. Ward's opinion. This Court need not address Petitioner's argument because Petitioner failed to argue the issue with any specificity in her briefing. *Carmickle*, 533 F.3d at 1161 n.2 (9th Cir. 2008). Nonetheless, the Court finds the ALJ applied the proper standard in assigning Dr. Ward's opinion little weight. (AR 362.)

The ALJ discussed Dr. Ward's report in great detail, and ultimately gave little weight to Dr. Ward's opinion. First, the ALJ noted Petitioner went from December 2010 to January 2013, shortly before the 2013 hearing, with no treatment for her mental health disorders despite Dr. Ward's opinion that, without treatment, Petitioner risked decompensation. Petitioner failed to seek treatment with no adverse effects from 2010 to 2013. Second, the ALJ noted upon Petitioner's return to treatment at CREOKS in 2013, the medical record indicated Petitioner did not appear much different from a mental health perspective than when she was receiving regular treatment. (AR 362, 363.) Thus, there was no worsening of Petitioner's mental health symptoms without treatment. And finally, the treatment note to which the ALJ refers, dated February 6, 2013, does not contain any reference to OCD symptoms, and Petitioner reported at the time she was suffering from mood swings and a dysfunctional relationship with her boyfriend. (AR 363, 427 – 436.) There was no reported difficulty in mental functioning due to OCD symptoms upon Petitioner's return to treatment.

**MEMORANDUM DECISION AND ORDER - 12**

Accordingly, the Court finds the ALJ provided clear and convincing reasons supported by substantial evidence in the record for assigning Dr. Ward's opinion little weight.

### B.    *Dr. Moore*

Petitioner argues the ALJ failed to properly consider the opinion of Dr. Moore, without offering specific reasons other than more weight should have been given to Dr. Moore's assessment because Dr. Moore is a treating physician. (Pet. Brief at 10.) Again, without offering specific argument, the Court need not address Petitioner's arguments. *Id.* Nonetheless, the Court finds the ALJ applied the proper standard in assigning Dr. Moore's opinion little weight. (AR 365.)

Dr. Moore examined Petitioner and completed a Mental RFC Questionnaire on July 13, 2010. (AR 294 – 298.) Dr. Moore completed a "check the box" form identifying Petitioner's signs and symptoms. (AR 295.) According to Dr. Moore, Petitioner could not meet competitive standards in several areas, including maintaining attention for two hour increments, maintaining regular attendance, completing a normal workday or workweek without interruptions from psychologically based symptoms, performing at a consistent pace, getting along with co-workers without unduly distracting them or exhibiting behavioral extremes, and dealing with work stress. (AR 296.) Dr. Moore further indicated Petitioner was unable to meet competitive standards in carrying out detailed instructions and maintaining appropriate behavior, and that Petitioner would be absent more than four days each month due to her impairments. (AR 296 – 298.) Dr. Moore indicated all of his

**MEMORANDUM DECISION AND ORDER - 13**

opinions were based upon a clinical interview with Petitioner. (AR 296 - 298.)  Dr. Moore's diagnosis indicated bipolar disorder, posttraumatic stress disorder, and OCD, and he assigned Petitioner a current GAF score of fifty-three.

The ALJ gave sufficient reasons, supported by substantial evidence in the record, for assigning Dr. Moore's opinion little weight. The ALJ rejected Dr. Moore's opinion that Petitioner was unable to meet competitive standards on the grounds that Dr. Moore's assessment was internally inconsistent, and inconsistent with the opinions of other physicians in the record. As an example, the ALJ noted that the GAF score of fifty-three fell within the moderate range, indicating moderate, not severe symptoms. (AR 365.)

The second example the ALJ cited was the treatment plan completed on May 18, 2010, which Dr. Moore completed and which did not indicate the same level of impairment. (AR 290 - 293.) The May 2010 treatment plan did not include a diagnosis of OCD, and indicated Petitioner had a fair prognosis.

And the third example the ALJ gave was the contradiction between Dr. Moore's opinion and those of Drs. Pearce and Cox, who were of the opinion Petitioner could complete simple, work related tasks that did not require extensive, in-depth contact with the general public. *Tonapetyan v. Halter*, 242 F.3d 1144, 1148-49 (9th Cir. 2001) (the contrary opinion of a non-examining medical expert may constitute substantial evidence when it is consistent with other independent evidence in the record.) The ALJ noted also

**MEMORANDUM DECISION AND ORDER - 14**

that Dr. Werlla indicated Petitioner's symptoms improved when treated,[3] and an

examination completed on February 5, 2013, indicated Petitioner was only moderately

angry. (AR 365, 427 – 436.)

Accordingly, the Court finds the ALJ provided clear and convincing reasons

supported by substantial evidence in the record for assigning Dr. Moore's opinion little

weight.

### C.    *Dr. Pearce*

State agency reviewing psychological consultant Dr. Pearce completed a Mental

Residual Functional Capacity Assessment and a psychiatric review form on July 28,

2009. (AR 260, 273.) According to Dr. Pearce, who considered Petitioner's OCD (AR

266), Petitioner was moderately limited in her ability to understand and remember

detailed instructions and carry them out, and moderately limited in her ability to interact

appropriately with the general public. For the most part, Dr. Pearce considered Petitioner

to not be significantly limited in any functional areas. Dr. Pearce considered Petitioner to

be able to understand, remember and carry out simple and some, but not all, more

detailed instructions under routine supervision. Dr. Pearce was of the opinion that

Petitioner's concentration was impacted by her multiple mental impairments but that

Petitioner would be able to complete work-related tasks that did not require extensive, in

depth contact and interaction with the general public and that Petitioner could relate to

---

[3] Dr. Wrella noted on September 15, 2009, that the "higher dose of Zoloft has helped her mood and anxiety," and on August 8, 2009, that Petitioner "thinks the Ability and Zoloft have helped with racing thoughts." (AR 284 - 285.)

supervisors and coworkers incidentally and for work-related purposes. (AR 260.) Dr.

Pearce's notes indicated Petitioner was compromised in her ability to tolerate stress as a

consequence of the symptoms associated with her mental impairments, which included

OCD. (AR 273.) The ALJ gave Dr. Pearce's opinion great weight, on the grounds that it

was consistent with the medical evidence of record from CREOKS and Dr. Werlla. (AR

365.)

Petitioner suggests that, by assigning Dr. Pearce's opinion great weight, the ALJ's

determination did not contain any limitations with respect to Petitioner's RFC for

tolerating work-related stress, or the symptoms of her OCD. Pet. Brief at 8. (Dkt. 18.)

However, Dr. Pearce expressly considered Petitioner's self-reported symptoms of OCD[4]

and, despite those, was of the opinion Petitioner was capable of performing simple tasks

and retaining sufficient focus to complete work-related tasks that did not require

extensive, in-depth interaction with the public. Contrary to Petitioner's argument, Dr.

Pearce's opinions, and the resulting RFC assessment by the ALJ, are not inconsistent.

Rather, Dr. Pearce was of the opinion that, despite Petitioner's OCD, Petitioner could

adequately function in the work place with limitations on her social interactions.

Consequently, the ALJ, by accepting Dr. Pearce's medical opinion, included Dr. Pearce's

---

[4] Petitioner did not contest the ALJ's credibility evaluation, and therefore Petitioner waived any challenge to the ALJ's findings in that regard. *Martinez–Serrano v. INS*, 94 F.3d 1256, 1260 (9th Cir.1996). The ALJ did not find Petitioner's subjective complaints fully credible based upon the medical evidence of record, and therefore did not need to include all of her subjective complaints in the RFC analysis. (AR 366.); *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005) (ALJ may take into account limitations for which there is support in the record that does not depend upon the claimant's subjective complaints).

**MEMORANDUM DECISION AND ORDER - 16**

findings within her RFC determination.

Accordingly, the record does not support Petitioner's assertions of error based upon the ALJ's assignment of great weight to Dr. Pearce's opinion.

### 3. Petitioner's RFC

At the fourth step in the sequential process, the ALJ determines whether the impairment prevents the claimant from performing work the claimant performed in the past, i.e., whether the claimant has sufficient residual functional capacity to tolerate the demands of any past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). A claimant's residual functional capacity is the most she can do despite her limitations. 20 C.F.R. § 404.1545(a). An ALJ considers all relevant evidence in the record when making this determination. *Id.* Generally, an ALJ may rely on vocational expert testimony. 20 C.F.R. § 404.1566(e); *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005). An ALJ must include all limitations supported by substantial evidence in her hypothetical question to the vocational expert, but may exclude unsupported limitations. *Bayliss*, 427 F.3d at 1217. The ALJ need not consider or include alleged impairments that have no support in the record. *See Osenbrock v. Apfel*, 240 F.3d 1157, 1163–64 (9th Cir. 2000).

Here, Petitioner contends the ALJ's finding that Petitioner had moderate limitations in concentration, persistence and pace was inconsistent with the ALJ's RFC assessment, which limited Petitioner to "simple, routine tasks." Petitioner argues an RFC limiting a claimant to simple, routine tasks does not adequately capture a finding that a

**MEMORANDUM DECISION AND ORDER - 17**

claimant is moderately limited with regard to concentration, persistence and pace, and contends the holding in *Stubbs-Danielson v. Astrue*, 539 F.3d 1169 (9th Cir. 2008), is distinguishable.

In *Stubbs*, the Ninth Circuit Court of Appeals held that an ALJ's assessment of a claimant's limitations adequately captures restrictions related to concentration, persistence, or pace where the assessment is consistent with restrictions identified in the medical testimony. *Stubbs-Danielson*, 539 F.3d at 1174. In *Stubbs*, the record contained some evidence of the claimant's slow pace, but the only concrete functional limitation provided by the medical sources was that the claimant could perform "simple tasks." *Id*. at 1173–74. The reviewing physician identified a "slow pace, both in thinking and actions," and several moderate limitations in other mental areas, but the physician concluded the claimant retained the ability to carry out simple tasks. *Id.* Consequently, the ALJ formulated a RFC that limited the claimant to "simple, routine, repetitive sedentary work." *Id*. at 1173. The court concluded the ALJ did not err in formulating the RFC and, as a result, did not err in formulating a hypothetical question to the vocational expert. *Id*. at 1174.

In *Moza v. Astrue*, 2012 WL 1869364 * 5 (D. Ariz. May 22, 2012), the court explained *Stubbs-Danielson* would not control in a case where the medical testimony established limitations in concentration, persistence and pace, and did not contain any further elaboration. In other words, where the medical evidence establishes moderate limitations in maintaining concentration, persistence, or pace, the ALJ commits error

**MEMORANDUM DECISION AND ORDER - 18**

when she assumes those restrictions allow "simple, repetitive work" if there is no support for that conclusion in the record. Therefore, a hypothetical limiting the claimant to simple, repetitive work that excludes a claimant's difficulties with concentration, persistence, or pace, results in an incomplete hypothetical question unsupported by substantial evidence. *Id.*

Here, Dr. Pearce found, as part of the Part B criteria, Petitioner had moderate difficulties in maintaining concentration, persistence or pace. (AR 271.) However, despite such limitations, Dr. Pearce concluded that those difficulties resulted in a moderate limitation in Petitioner's ability to carry out detailed instructions, and he qualified these findings in his explanation. (AR 258.) Dr. Pearce assessed Petitioner as having the ability to understand, remember and carry out simple instructions, and was of the opinion that her concentration, while impacted, would not preclude Petitioner's ability to focus sufficiently to complete work-related tasks that did not require extensive contact and interaction with the general public. (AR 260.)

The ALJ's finding here is not distinguishable from that in *Stubbs*. In *Stubbs*, the medical consultant reviewed the medical evidence, including the limitation that the petitioner was "moderately limited" in her ability to perform at a consistent pace, yet determined that despite such limitations, the petitioner retained the ability to carry out simple work-related tasks.  Similarly, Dr. Pearce concluded that, despite Petitioner's limitations with respect to her concentration and pace, Petitioner retained the ability to carry out work-related tasks and could follow simple instructions under supervision.

**MEMORANDUM DECISION AND ORDER - 19**

As in *Stubbs-Danielson*, the ALJ interpreted Petitioner's condition, including the moderate pace and concentration limitations, in line with Dr. Pearce's findings. Dr. Pearce recommended a restriction to simple instructions, and because of Petitioner's focus and concentration issues, he limited Petitioner to tasks that did not require in-depth interaction with the public. The Court finds the ALJ's limitation of Petitioner to superficial and incidental work-related interaction with co-workers and supervisors, and simple, routine tasks, captures the limitations identified by Dr. Pearce, which expressly included findings related to pace and other mental limitations regarding attention and concentration. *Howard v. Massanari*, 255 F.3d 577, 582 (8th Cir. 2001), *cited in Stubbs-Danielson*, 539 F.3d at 1174. Based upon the record, the ALJ's hypothetical that included the capability of doing simple, routine tasks adequately captured Petitioner's deficiencies in concentration, persistence or pace given Dr. Pearce's functional capacity evaluation. *Id.*

Accordingly, based upon a review of the record, the Court concludes the ALJ's RFC finding properly incorporated Petitioner's limitations identified by Dr. Pearce, including those related to pace and other mental limitations regarding concentration and persistence.

## CONCLUSION

For the reasons stated above, the Court will affirm the decision of the Commissioner. The Court finds the ALJ's decision was free from legal error. The ALJ's failure to include a finding that Petitioner's OCD was severe at step two was harmless

**MEMORANDUM DECISION AND ORDER - 20**

error where the ALJ expressly discussed the medical evidence of record related to Petitioner's mental health symptoms, which evidence included Petitioner's OCD diagnosis. The ALJ properly evaluated the medical opinion evidence and provided clear and convincing reasons for assigning the opinions of Drs. Moore and Ward little weight. And finally, the ALJ's hypothetical question posed to the vocational expert, and the resulting RFC finding, was consistent with *Stubbs-Danielson* and the medical evidence of record, specifically the conclusion of Dr. Pearce.

## ORDER

Based upon the foregoing, the Court being otherwise fully advised in the premises, **it is hereby ORDERED that** the Commissioner's decision finding that the Petitioner is not disabled within the meaning of the Social Security Act is **AFFIRMED** and that the petition for review is **DISMISSED**.



DATED: March 28, 2016

Honorable Candy W. Dale
United States Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 21**